IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| BNSF RAILWAY COMPANY, a Delaware Corporation,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>TERRY ROD,<br><br>　　　　　　Defendants. | CV 21-109-BLG-SPW<br><br>ORDER ADOPTING IN PART AND REJECTING IN PART FINDINGS AND RECOMMENDATIONS |

Before the Court is Magistrate Judge DeSoto's Findings and Recommendations (Doc. 25) regarding Plaintiff BNSF Railway Co.'s Complaint and Petition for Judicial Review (Doc. 1) of the Montana Human Rights Commission ("MHRC") final administrative decision in favor of Defendant Terry Rod's disability discrimination claim. Judge DeSoto recommended that the MHRC's decision finding that BNSF illegally discriminated against Rod and awarding him back pay, emotional distress damages, and front pay to the age of 65 be affirmed in part and reversed in part. (Doc. 25 at 1). Judge DeSoto agreed that BNSF discriminated against Rod but recommended remanding the matter to the agency to determine the impact of the Glendive Diesel Shop's closure in 2020 on the front pay award.

1

BNSF objects to Judge DeSoto's recommendation, stating that it was error to uphold the MHRC's determination of discrimination because the agency failed to consider BNSF's contrary evidence regarding whether Rod could perform essential job functions and whether BNSF could accommodate Rod. (Doc. 31 at 2). Rod objects to Judge DeSoto's recommendation that the matter be remanded to the MHRC, arguing that the decision should be affirmed in its entirety and that BNSF should not be allowed to reopen the record long after the initial hearing to introduce evidence regarding the shop closure. (Doc. 30 at 3). The Court agrees with Rod and, for the following reasons, adopts in part and rejects in part Judge DeSoto's Findings and Recommendations.

## I. Background

The Court's review is confined to the administrative record, as Judge DeSoto noted in her Findings. *See* Mont. Code Ann. § 2-4-704 (1). Neither party objects to Judge DeSoto's recitation of the facts in the record, but the Court will provide a brief outline for clarity's sake.

Rod began work with BNSF as a union machinist in 1994 at the Glendive Diesel Shop, performing a range of maintenance and repair work. In 2006, Rod was diagnosed with idiopathic spastic paraparesis, which affects his lower extremities and causes a spastic gait. After occupational testing, BNSF modified Rod's duties to accommodate his disability, allowing him to perform his machinist

work sedentarily. In 2017, the shop furloughed many employees and reorganized the remaining positions. Rod applied for and received one of the new machinist positions but, following his first shift on May 8, 2017, BNSF informed Rod that he was being removed from service and placed on medical leave. Shop Superintendent Gabe Schlosser did not believe that Rod could perform the machinist position duties because they would require greater physical work than Rod could perform and there was not enough sedentary work available. Schlosser told Rod that Rod would no longer have a position at BNSF if Rod's restrictions were not released.

On October 30, 2017, Rod filed an administrative complaint with the Department of Labor and Industry, alleging that BNSF violated the Montana Human Rights Act ("MHRA") when it terminated him based on his disability. After a contested case hearing, the Hearing Officer issued a decision on November 27, 2019, in favor of Rod and awarded back pay, emotional distress damages, and four years of front pay. On appeal to the MHRC, on June 17, 2020, MHRC affirmed the decision as to back pay and emotional distress damages but remanded for further proceedings recalculating the front pay award. On January 29, 2021, the Hearing Officer issued her decision, now awarding Rod front pay to the age of 65. The MHRC affirmed the decision on June 23, 2021, and BNSF filed the instant suit on July 23, 2021.

Judge DeSoto determined that the Hearing Officer's decision that Rod could perform the essential functions of the machinist position with reasonable accommodations and that BNSF failed to provide those reasonable accommodations was supported by substantial evidence. As to the Hearing Officer's determination that Rod was otherwise qualified to perform the machinist lead positions with an accommodation of sedentary work and that accommodating Rod would have been reasonable, the Hearing Officer properly considered the nature of the position and BNSF's size and available resources. (Doc. 25 at 10). The Hearing Officer also properly determined the essential functions of the position by considering the posted job description, Rod's description of his prior work in the role, and testimony provided by BNSF employees and management regarding the intended scope of the role and the "real life" duties of the position. (Doc. 25 at 10). The Hearing Officer relied on the same testimony, as well as a rehabilitation report by vocational consultant Margot Luckman, to determine that any accommodations Rod needed were reasonable. Judge DeSoto also concluded that these determinations were supported by substantial evidence. (Doc. 25 at 23).

However, Judge DeSoto found that the Hearing Officer's refusal to reopen the record to include evidence of the Glendive Diesel Shop's closure in 2020 was founded on a mistake of law and recommended that the matter be remanded to the

4

agency for proceedings that assessed the impact of the closure on the front pay award. (Doc. 25 at 30-31).

## II.   Legal Standard

### A. *Standard of Review*

Litigants are entitled to *de novo* review of those findings or recommendations to which they properly object. 28 U.S.C. § 636(b)(1). When neither party objects, this Court reviews a magistrate's Findings and Recommendations for clear error. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). A party makes a proper objection "by identifying the parts of the magistrate's disposition that the party finds objectionable and presenting legal argument and supporting authority such that the district court is able to identify the issues and the reasons supporting a contrary result." *Lance v. Salmonson*, 2018 WL 4335526, at *1 (D. Mont. Sept. 11, 2018). A district court, when conducting review of a magistrate's recommendations, may consider evidence presented for the first time in a party's objections, but it is not required to. *Brown v. Roe*, 279 F.3d 742, 744 (9th Cir. 2002).

### B. *Agency Appeal Standard of Review*

Federal district courts have subject matter jurisdiction over diversity cases involving "on-the-record review of a Montana administrative agency decision."

*BNSF Ry. Co. v. O'Dea*, 572 F.3d 785, 791 (9th Cir. 2009). The district court reviews a final administrative decision to determine "whether the agency's findings of fact are clearly erroneous and whether the agency's interpretation and application of law are correct." *Denke v. Shoemaker*, 198 P.3d 284, 295 (Mont. 2008). "A factual finding is clearly erroneous if it is not supported by substantial evidence in the record, if the fact-finder misapprehended the effect of the evidence, or if a review of the record leaves the court with a definite and firm conviction that a mistake has been made." *Denke*, 198 P.3d at 295. "Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Blaine County v. Stricker*, 394 P.3d 159, 165 (Mont. 2017) (internal question marks and alteration omitted).

The Court views the evidence "in the light most favorable to the prevailing party when determining whether findings of fact are supported by substantial credible evidence." *Blaine County*, 394 P.3d at 165. "The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact," and if additional evidence is needed the court must remand to the agency for that purpose. Mont. Code Ann. § 2-4-704(2).

The "standard of review for an administrative agency's conclusions of law is whether its interpretation of the law was correct." *Cambra Foods v. Mont. Dep't*

6

*of Revenue*, 925 P.2d 855, 856 (Mont. 1996). The interpretation of an agency's remand order is a question of law requiring de novo review, as is the interpretation of a procedural rule. *In re Molasky*, 843 F.3d 1179, 1184 (9th Cir. 2016) (interpretation of a prior decision); *Yellowstone County v. Drew*, 160 P.3d 557, 560 (Mont. 2007) (procedural rule).

C. *Disability Discrimination*

The MHRA prohibits discrimination in employment because of physical or mental disability. Mont. Code Ann. § 49-2-303(1)(a). "Discrimination under the MHRA includes 'the failure to make reasonable accommodations that are required by an otherwise qualified person who has a physical or mental disability.'" *Alexander v. Mont. Dev. Ctr.*, 430 P.3d 90, 94 (Mont. 2018) (quoting Mont. Code Ann. § 49-2-101(19)(b)). The term "reasonable accommodation" means "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable [a qualified] individual with a disability […] to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). "An accommodation that would require an undue hardship … is not a reasonable accommodation." Mont. Code. Ann. § 49-2-101(19)(b).

The Montana Supreme Court looks to federal law for guidance when interpreting the MHRA. *Alexander*, 430 P.3d at 94. Disability discrimination

7

claims under the MHRA are typically analyzed using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973). *See Conlan v. Costco Wholesale Corp.*, 2021 WL 2354745, at *8 (D. Mont. June 9, 2021).

In cases where "the employer acknowledges that it relied upon the plaintiff's [disability] in making its employment decision," the Montana Supreme Court has held that the *McDonnell Douglas* test "is unnecessary because the issue of the employer's intent, the issue for which *McDonnell Douglas* was designed, has been admitted by the defendant...and the plaintiff has direct evidence of discrimination on the basis of his or her disability." *Reeves v. Dairy Queen, Inc.*, 953 P.2d 703, 706-07 (Mont. 1998) (quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1182 (6th Cir. 1996)).

Assuming the plaintiff in such a case is in fact disabled, the determinative issue will not be the employer's intent, but "whether the employee is 'otherwise qualified' with or without reasonable accommodation." *Laudert v. Richland County Sheriff's Dept.*, 7 P.3d 386, 391 (Mont. 2000) (citing Reeves, 953 P.2d at 706-07.).

### III. Discussion

BNSF argues that Judge DeSoto wrongly concluded that the Hearing Officer's decision was supported by substantial evidence, generally contending

that both the Hearing Officer and Judge DeSoto did not give appropriate weight to BNSF's evidence regarding the essential functions of the machinist position. (Doc. 31 at 4-5). Specifically, BNSF argues that the Hearing Officer only relied on non-management co-worker testimony to support the findings regarding the essential functions of the machinist position. BNSF argues that it should have been given extra consideration as to its determination of essential job functions as the employer under 42 U.S.C. § 12111(8), and that Schlosser's testimony regarding the machinist position should have been given more weight, since Schlosser was the superintendent at the site and responsible for crafting the roles of the new machinist positions. (Doc. 31 at 10-11).

    BNSF misstates the evidence in proclaiming that no consideration was given to its judgment or that of its managers. As Judge DeSoto noted, the Hearing Officer acknowledged and considered Schlosser's testimony that the machinist position was intended to include physical duties. However, the Hearing Officer ultimately found the credibility of that intention was undercut by the fact that those physical duties were not performed with any regularity by the machinists following Rod's removal and the "stark contrast" between the job duties as outlined by BNSF and the testimony regarding the "real life" duties of the dayshift machinist position bid on by Rod. (Doc. 25 at 19). The Hearing Officer did not "only" rely on non-management evidence, as BNSF claims. Instead, the record clearly reflects the

Hearing Officer's consideration of Schlosser's and BNSF's position weighed against other evidence. It is not the duty of the Court to reweigh the evidence regarding witness credibility or weight, and it is equally clear that at least substantial evidence supports the Hearing Officer's finding that Rod was otherwise qualified for the position and could perform the essential functions of the position with reasonable accommodations.

BNSF also argues that the Hearing Officer erroneously determined that BNSF failed to provide reasonable accommodation to Rod after the contraction of the workforce at the Glendive Diesel Shop. (Doc. 31 at 15). BNSF reasserts its argument that the Hearing Officer "failed to consider, let alone give any deference to BNSF's business judgment as to what was required and what was important" about the machinist position.

Once again, this argument is undercut by the record. The Hearing Officer accounted for BNSF's judgment about the essential duties and weighed that evidence against other evidence in the record before concluding that the essential duties did not include the physical requirements that BNSF claimed. Arriving at a conclusion contrary to BNSF's position does not mean that the Hearing Officer failed to consider evidence presented by BNSF or that she "exclusively relied on limited co-worker testimony" regarding the essential functions and, consequently, the accommodations BNSF could have reasonably provided. In outlining the

accommodations, the Hearing Officer relied on the testimony of the other lead machinists, who stated that any physical labor included in the position could be performed by other employees providing assistance, if necessary, as well as the testimony of vocational rehabilitation consultant Margot Luckman. Additionally, Schlosser and his co-supervisor stated that they were not contacted by BNSF's labor relations, human relations, or medical department to even assess potential accommodations.

It is not the role of the Court to determine which of these witnesses is more credible, only to ensure that the Hearing Officer duly considered the evidence. The Hearing Officer's finding that BNSF failed to reasonably accommodate Rod is at least supported by substantial evidence.

Finally, Rod objects to Judge DeSoto's recommendation that the matter be remanded to the agency for additional fact-finding regarding the impact of the 2020 closure of the Glendive Diesel Shop on Rod's front pay award. (Doc. 30 at 10-11). Judge DeSoto determined that the Hearing Officer erred as a matter of law when she relied solely on *Glick v. State By and Through Montana Dept. of Institutions*, 528 P.2d 686 (Mont. 1974) in determining that she could not reopen the record on remand. In *Glick*, the state sought to introduce new evidence on remand regarding incorrect computations of hours worked by certain employees, but the district court refused to do so, stating that it was only permitted to consider

11

the record established prior to remand. *Id.* at 687. The Montana Supreme Court agreed with the district court and held that allowing the state to reopen the record on remand would be inappropriate, violative of the terms of the remand order, and contrary to the principles of "res judicata, the law of the case, and perhaps even stare decisis." *Id.*

Judge DeSoto determined that *Glick* was not controlling and materially factually and legally distinguishable because the evidence BNSF sought to introduce regarding the 2020 closure was new evidence unavailable to BNSF initially, unlike in *Glick*, where the evidence was in the state's possession since the lawsuit began. (Doc. 25 at 27-28). Judge DeSoto further distinguished *Glick* because it involved a final judgment previously entered in district court, where here the MHRC had not issued a final agency decision when BNSF sought to introduce new evidence.

Instead, Judge DeSoto concluded that the remand order to redetermine front pay damages did not prohibit the Hearing Officer from reopening the record to aid that redetermination. In support, Judge DeSoto relied on the Montana Supreme Court's articulation of the mandate rule in *Zavarelli v. Might*, 779 P.2d 489, 493 (Mont. 1989). The Court stated, "[o]n remand, the trial court may consider or decide any matters left open by the appellate court, and is free to make any order or direction in further progress of the case, not inconsistent with the decision of the

12

appellate court." *Id.* at 493. Judge DeSoto concluded under *Zavarelli* that the MHRC's remand order stating that the front pay damage award was to be calculated "based on the evidence in the record" did not prohibit the Hearing Officer from receiving new material evidence. (Doc. 25 at 28-29). Judge DeSoto weighed the importance of finality against the principle that damages are intended to put the plaintiff in the position they would be in absent the discrimination and not to confer a windfall, and determined that further factfinding was necessary to determine whether the 2020 closure would have also ended Rod's employment.

The Court agrees with Judge DeSoto that *Glick* is inapposite. However, the Court also concludes that *Zavarelli* does not provide a basis for reopening the record in this instance. The remand order from the MHRC states that the recalculation of the front pay award is to be "based on the evidence in the record"—that is, the record at the time of remand. To continue to receive new evidence while the case goes back and forth between the Hearing Officer and the agency would result in never-ending litigation and undue delay for payment of compensation damages for persons who have been discriminated against. Here, the record closed on October 4, 2018, following the close of the contested case hearing. It would be unjust and contrary to the principles of finality and fairness to reopen the record to include and require consideration of events occurring two years after the close of evidence. The Court rejects Judge DeSoto's

13

recommendation of remand and instead affirms the MHRC's decision awarding front pay.

## IV. Conclusion

IT IS ORDERED that Judge DeSoto's Findings and Recommendation (Doc. 25) are ADOPTED IN PART and REJECTED IN PART. The MHRC's final administrative decision in favor of Rod's disability discrimination claim is AFFIRMED IN FULL. The Clerk of Court shall notify the parties and close the case, as no issues remain.

DATED this 31st day of August, 2023.

_____
SUSAN P. WATTERS
United States District Judge